**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PERCY E. STOWERS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 19-14110 (FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| ANDREW M. SAUL, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant, | : | |

**WOLFSON, Chief Judge:**

Percy E. Stowers ("Plaintiff") appeals from the final decision of the Commissioner of Social Security, Andrew M. Saul ("Defendant"), denying Plaintiff disability benefits under Titles II and XVI of the Social Security Act (the "Act"). Specifically, Plaintiff argues, *inter alia,* that the Administrative Law Judge ("ALJ") failed to combine Plaintiff's several medical impairments in conducting his Step Three analysis. After reviewing the administrative record, this Court finds that remand is required for the ALJ to more fully explain his determination at Steps Three and Four. Accordingly, the ALJ's decision is vacated and remanded for reconsideration.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in 1961 and was 53 years old on the alleged disability onset date of April 4, 2015. A.R. 82-83. Plaintiff has an associate's degree in information technology ("IT"). *Id.* Immediately preceding the onset of Plaintiff's alleged disability, Plaintiff worked as a customer service representative in IT until March 2015. A.R. 251-252. Prior to that position, Plaintiff worked as a customer service representative for both Comcast and Johnson and Johnson. *Id.*

On October 8, 2015, Plaintiff filed an application for disability insurance benefits, based upon various ailments, including a spinal injury, pinched nerve in his neck, numbness in his left arm and hand, and a heart condition, beginning on April 4, 2015.  A.R.  218-19, 251.  Plaintiff's initial application and a subsequent motion for reconsideration were both denied.  A.R. at 117-123.  Thereafter, Plaintiff requested a hearing, which was held on November 27, 2017, before ALJ Kenneth Ayers.  A.R. 55-80.  In a written decision, dated July 18, 2018, the ALJ determined that Plaintiff was not disabled between April 4, 2015 and the date of decision, and that Plaintiff could perform sedentary work with some limitations.  *Id*.  Plaintiff requested review by the Appeals Council, which was denied on April 22, 2019.  A.R. 1-6.  On July 8, 2019, Plaintiff filed the instant appeal challenging the ALJ's decision.  While not part of the record on this appeal, Plaintiff asserts -- and Defendant seemingly does not dispute -- that while this appeal was ongoing, the Commissioner subsequently issued a notice of award on August 31, 2019 ,advising Plaintiff "we found that you became disabled under our rules on July 19, 2018" – the day after the ALJ's decision in this matter.  *See* Pl. Br. at 2 n.1.  Plaintiff asserts that "[t]here is no medical, vocational, educational or age-related significance" to the date and that its "sole significance is that it is the day after the ALJ in this case issued his decision."  *Id*.  Accordingly, in this appeal, Plaintiff only challenges the ALJ's disability findings between the onset date and July 18, 2018.  *Id.*

### a.  Review of Medical Evidence

In December 2013, prior to the onset of his disability, Plaintiff was diagnosed with  "right shoulder impingement syndrome" and a right rotator cuff partial tear.  A.R. 398-99, 454.  At that time, Dr. Mohmish Ramani prescribed over the counter medication and recommended physical therapy.  A.R. 400.  In January 2015, Plaintiff fell in the shower and began experiencing back numbness and pain.  A.R. 401.  Dr. Zahra Abdi, M.D., of the AIA Wellness Center, who was

Plaintiff's primary care physician, ordered an MRI of Plaintiff's spine which revealed a herniated disk.  A.R. 381, 529.  Dr. Adbi also provided ongoing treatment for Plaintiff's various ailments. Dr. Abdi prescribed physical therapy in which Plaintiff participated through February 2016.  A.R. 462-71.  On a questionnaire completed in November 2015, Dr. Adbi declined to provide  a medical opinion regarding Plaintiff's ability to work.  A.R. 393.

In February 2015, Plaintiff was seen by Dr. James E. Patti, M.D., of the Edison-Metuchen Orthopedic Group.  A.R. 462-71.  Over the course of several months, Dr. Patti prescribed physical therapy, pain medication, and a cervical epidural, all of which only partially alleviated Plaintiff's pain.  A.R. 401-422.  As a result, in August 2015, Dr. Patti performed surgery to address Plaintiff's "cervical stenosis" and "myelopathy C4 through C7."  A.R. 356-60; 424.  Prior to the surgery, Dr. Patti warned that the surgery was largely designed "to minimize symptoms" and Plaintiff might not experience immediate or dramatic relief.  A.R. 422.  At Plaintiff's post-operative appointments in August and September 2015, Plaintiff reported that he was still experiencing pain in his neck and left arm.  A.R. 437.  Dr. Patti noted that there was "positive tenderness over the midline of the cervical spine" and that the spine's range of motion was "decreased" but that Plaintiff's motor strength and sensation in the upper extremities were intact.  A.R. 427-431.  In January 2016, in his treating source statement, Dr. Patti opined that Plaintiff had "decreased range of motion, decreased sensation, decreased reflexes, and decreased strength.  His cervical spine is unstable at this time disabling him from all work."  A.R. at 461.

Approximately one year following Plaintiff's surgery in August 2016, Plaintiff reported that he was still experiencing left arm muscle spasms, and had begun experiencing "moderate to severe" mid and lower back pain.  A.R. 571.  Plaintiff's pain continued largely unchanged throughout 2016 and 2017, despite continued physical therapy.  A.R. 571-581.  In March 2017,

Dr. Patti noted that Plaintiff's hardware was stable, and recommended continued physical therapy. *Id*. In August 2017, Plaintiff reported that his pain had worsened, and after reviewing an MRI of Plaintiff's lumbar spine, Dr. Patti prescribed additional pain medication and instructed Plaintiff to return as needed. A.R. 583-84. A cervical spine MRI conducted in November 2017 revealed post-surgical changes from anterior fusion extending from the C4 to C7 levels, straightening of the spine, a small central disk herniation at the C3-C4 levels, resulting in moderate central spinal stenosis, effacement of the CSF surrounding the spinal cord, and at the C7-T1 level, a small central disc herniation, resulting in mild to moderate central spinal stenosis. A.R. 585.

From 2016 to 2018, Plaintiff also received chiropractic treatment from Joseph Guidice, D.O. A.R. 587. In February 2018, Dr. Guidice opined that due to degenerative spinal changes, it was impossible for Plaintiff to perform any upright or sitting activity for an extended period of time. *Id*. In Dr. Guidice's view, Plaintiff was not a good candidate for surgery and could not work in any capacity. *Id*. In June 2018, Dr. Guidice opined on a Medical Source Statement that Plaintiff 1) could lift/carry up to 10 pounds with his right arm only; 2) could sit for one hour at a time and for one hour total and could not stand/walk at all in an eight-hour day; 3) required the use of a cane; 4) never could use his left hand and never could reach overhead with his right arm but occasionally could use it otherwise; 5) frequently could use his feet to operate foot controls; 6) occasionally could balance and climb stairs and ramps; 7) could never perform other postural activities, and could never endure unprotected heights, moving mechanical parts, humidity and wetness, extreme cold, or vibrations. A.R. 590-596.

In addition to the spinal issues, Plaintiff also suffers from a coronary artery disease. In May 2016, testing ordered by Plaintiff's primary physician revealed a "relatively large area of infarction occupying the anterior wall, anterolateral walls, and apical region," and a suspected

"small area of ischemia in the anterior wall." A.R. 480-81. A nuclear exercise stress test was non-diagnostic due to limited chronotropic response. A.R. 481. On May 10, 2016, cardiologist Varinder Singh, M.D., performed a left heart catheterization and coronary artery angiography that confirmed that Plaintiff was suffering from multi-vessel coronary artery disease A.R. 477-79. Subsequently, Plaintiff had two surgeries and stents were placed. A.R. 588. Despite the placement of the stents, a June 2018 cardiovascular CT angiogram revealed additionally lesions, suspected severe stenosis of the distal left circumflex artery, and 50% stenosis of the mid right coronary artery. A.R. 588.

Two state agency medical consultants, Dr. Joseph Udomsaph and Dr. B. Cortijo Ex. 3A, reviewed Plaintiff's medical record. A.R. 82-92; 94-107. Dr. Udomsaph assessed Plaintiff as being able to perform "light work," including occasionally carrying 20 pounds, standing and walking for about 6 hours out of an 8 hour workday. A.R. 86. Similarly, Dr. Cortijo concluded that Plaintiff could perform light work with some limitations on his ability to lift and carry. A.R. 103.

### b. Review of the Testimonial Record

On November 27, 2017, Plaintiff testified at the hearing before the ALJ, during which he spoke about various matters, including his then-daily routine, living situation, and physical capabilities. A.R. 57-76. Plaintiff testified that the last time he worked full time was in the spring of 2015. AR 61. At that time, he worked on the help desk and his duties included "quite a bit of lifting." *Id*. On a daily basis, Plaintiff lifted "two or three" laptops at a time, and was required to replace equipment such as monitors, desktops and laptops. A.R. 61-63. Plaintiff also occasionally carried "25 to 30 pound" bins. *Id*. Plaintiff also provided trouble shooting services over the phone.

A.R. 62.   Prior to his job in IT, Plaintiff worked in a warehouse loading and unloading trucks and was required to lift "about 75 pounds."  A.R. 63.

Plaintiff explained that in April 2015, he began experiencing severe neck and back pain which made it difficult for him to drive or use his left arm.  A.R. 66-67.  Following his surgery, Plaintiff continued to experience numbness and tingling in his left hand which persisted at the time of the hearing.  A.R. 68-69.  Further, as a result of "over-usage of the right hand" to compensate, Plaintiff also suffers from "small motor function issues" in that hand.  A.R. 69. Plaintiff also experiences pain "in the middle of [his] back" which feels like a "javelin." A.R. 70.  Pain medicine does not help his back pain, and the only way Plaintiff can relieve the pain is to "stop what [he is] doing] and to more or less recline [himself] so that he take[s] that pressure off of his body."  A.R. 70.  Plaintiff also experiences sciatic pain down his right leg.  A.R. 71.  Plaintiff explained that he uses a cane to walk around and his girlfriend, who lives one house away on the same street, helps him with many of activities of daily living such as cooking, dressing and laundry, as his pain prevents him from bending down or standing for more than 15 minutes at a time without a break A.R. 74.  Plaintiff also reported being unable to sit for more than 10 or 15 minutes at a time, without having to get up, and that he has trouble with his balance and difficulty straightening when rises from a sitting position.  A.R. 75.  As a result, Plaintiff spends most of the day at home "either in a chair that would allow [him] to lean back" or on his bed "laying on pillows that are supporting [him] and allowing [him] to take that pressure off."  A.R. 76.

Mr. Rocco J. Neola testified as a Vocational Expert ("VE") at the hearing.  A.R. 77-80 . The ALJ provided the VE with a single hypothetical, positing:

> I'd like you to assume a hypothetical individual of the same age, education and work experience at the light level, except that lifting and carrying is reduced to ten pounds occasionally and less than ten pounds frequently.  The hypothetical individual can occasionally reach overhead on the left and occasionally reach

overhead on the right.  Can climb ramps and stairs occasionally. Can climb ladders, ropes, and scaffolds occasionally. Can occasionally balance, occasionally stoop, occasionally crouch, occasionally crawl.  Is limited to performing simple, routine tasks and absent the use of judgment in dealing with changes in the work setting is limited to simple work related decisions.  Based on those limitations would any of the past work be available?

[A.R. 78-79].  The VE responded, "No." A.R. 79. When asked whether there were any occupations that the hypothetical individual above could perform, the VE explained "Not at the light level, Your Honor. The limitations in that hypothetical, it is basically a sedentary RFC."  A.R. 79.  In response, the ALJ noted, "Okay, and then sedentary, he would grid for the entire period. So. All right."  *Id*.

### c.   The ALJ's Findings

The ALJ issued a written decision on July 12, 2017, and determined that Plaintiff was not disabled from April 4, 2015 through the date of the decision.  A.R. 20.  The ALJ applied the standard five-step process in considering whether Plaintiff had satisfied his burden of establishing disability.

First, the ALJ found that although Plaintiff engaged in some substantial gainful activity from October 2016 through March 2017, "there [was] a period to be adjudicated from the alleged onset date to the beginning of the fourth quarter of 2016 that is over 12 months."  A.R. 21.  Thus, the ALJ found that there was "a continuous 12-month period during which [Plaintiff] did not engage in substantial activity," and the ALJ's findings addressed that period.  A.R. 21-22.  Second, the ALJ held that Plaintiff had the following severe impairments:

Spine disorder (discogenic and degenerative) including cervical stenosis, myelopathy C4-C7 status post anterior cervical discectomy of C5-C6 with fusion and instrumentation of C4 through C7 using Medtronics stackable PEEK interbody implants and Atlantis Vision anterior cervical plate, degenerative disc disease of the cervical spine, left-sided herniation of C7-T1; herniated discs of the lumbar spine at L5-S1 compressing the right L6 and right S1 nerve roots, bulge at L4-5 with facet hypertrophy, right-sided 15 hypertrophic changes at right L5 nerve root,

and marrow edema at the right pedicles of L4-5; right shoulder impingement syndrome, osteoarthritis; sub-acute left C6 radiculopathy; coronary artery disease, stable angine and status post stents.

A.R. 22. *Id.* However, at the third step, the ALJ determined that these conditions together did not meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). A.R. 23. The ALJ explained that "[w]ith respect to the claimant's spinal impairments, the requirements of listing 1.04 [the Impairment List] have not been met because the evidence fails to demonstrate the existence of a 'herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture' which results in the compromise of a nerve root or the spinal cord along with the requirements of A, B, or C of this listing." *Id.* With respect to Plaintiff's shoulder impairment, the ALJ similarly found that the requirements of Section 1.01 of the Impairment List were not met

> because there is no evidence of a gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints with involvement of one major peripheral joint in each upper extremity . . . resulting in inability to perform fine and gross movements effectively[.]

A.R. 23. With respect to Plaintiff's heart condition, the ALJ noted that "all of the cardiac listings" in the Impairment list had been reviewed and "none of those listings have been met or equaled."

A.R. 23-24. Specifically, the ALJ explained that the medical evidence lacked

> a sign-or-symptom-limited exercise tolerance test demonstrating at least one of the manifestations described in the listing. In addition, there has not been three separate ischemic episodes requiring revascularization and/or not amenable to revascularization within a twelve month period. The claimant further does not have coronary artery disease demonstrated by appropriate medically acceptable imaging[.]

A.R. 24.

Fourth, the ALJ found that, Plaintiff possessed the residual functional capacity ("RFC") to perform "less than a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a)", with some limitations:

> Except lifting less than 10 pounds frequently, standing for two hours and walking for two hours in an eight-hour day; with occasionally reaching overhead to the left, and occasionally reaching overhead to the right; and climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally.

*Id*. The ALJ reached this conclusion based upon Plaintiff's medically determinable impairments, but also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were only partially consistent with the medical evidence. A.R. 25. The ALJ noted that Dr Patti, Plaintiff's treating physician, stated that "claimant's cervical spine was unstable disabling him from all work," however, in the ALJ's view, that assessment was "not indicative of [Plaintiff's] overall functioning going forward" because it was conducted within four months of Plaintiff's surgery. Further, the ALJ found that the findings from subsequent examinations were "not indicative of a severely disabling condition," because Dr. Patti "noted an unremarkable cervical spine, intact motor strength, negative special tests, normal motion of the lumbar spine and intact strength, sensation and reflexes." A.R. 27. The ALJ gave "less weight" to the chiropractor's assessment that Plaintiff was disabled because the ALJ found that the opinion was "not substantiated by evidence either in the doctor's own statements during chiropractic treatment nor in the physical examinations made by the other treating sources, which indicate mixed to normal findings throughout care." *Id*. The ALJ also disagreed with the state agency physician's conclusions that Plaintiff could perform "light work" and "light work with a reduced ability to lift/carry" and found that "a sedentary [RFC was] better supported by the evidence" in light of Plaintiff's coronary artery disease issues, right shoulder issues, the upper extremity

weakness and c6 radiculopathy." *Id*. Therefore, based upon his RFC and physical demands from past work, the ALJ concluded that Plaintiff was able to perform prior work as customer service representative. A.R. 27-28. In reaching that determination, the ALJ considered Plaintiff's RFC, work experience, and VE testimony. *Id*. Accordingly, the ALJ found that Plaintiff was not disabled from April 2015, the onset date, through the date of decision. A.R. 28.

## II.    DISCUSSION

### a.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record

that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  *See* 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Eligibility for supplemental security income requires the same showing of disability.  *Id*. at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  *See* 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity."  *Id*. at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits.  *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities

include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id*. A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in the Impairment List. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id*. at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step

five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  *Id*.

## II.      ANALYSIS

Plaintiff raises two arguments as to why the ALJ's decision is unsupported by substantial evidence.  First, Plaintiff argues that the ALJ erred at Step Three by finding that he did not suffer from the medical equivalent of the disability laid out in Paragraph 1.04 of the Impairment List.  Pl. Br. at 10.  Second, Plaintiff contends that the ALJ's analysis at Step Four is "unreviewable" because the "RFC is announced without rationale and . . .  plaintiff's pain and the modalities for its relief are improperly rejected or totally ignored."  *Id*.

### 1.  Step Three

Plaintiff challenges the ALJ's finding that Plaintiff's spinal impairments did not meet or equal any of the impairments identified in the Impairment Listing, specifically the listing at Paragraph 1.04A.  Plaintiff argues that although the ALJ acknowledged that Plaintiff suffers from several spinal impairments, "the step 3 consideration of these multiple spinal impairments neither combines them nor compares them to the Commissioner's spinal listing at paragraph 1.04," nor did the ALJ consider whether "the spinal impairments in combination with plaintiff's joint disorders and cardiac condition" would constitute the medical equivalent of the spinal listing on the Impairment List.  *Id*. at 15-16.  Plaintiff asserts that he meets each requirement of listing 104A, and that the ALJ's analysis at Step Three is "conclusory and contradictory."  *Id*. at 15, 17.

Moreover, Plaintiff asserts that the ALJ erred by discounting Dr. Patti's disability opinion, and "portraying it as too early and pretending that the doctor reported later improvement." *Id.* at 21.

In response, Defendant argues that the ALJ's findings were supported by substantial evidence, specifically the facts that Plaintiff "did well post-operatively" and that CT scans from December 2015 indicate that Plaintiff's interior plate and screw were "were in good position." Def. Br. at 12. Defendant also highlights Dr. Adbi's findings during various physical examinations of Plaintiff, which "exhibited normal reflexes, no lumbar spine tenderness." *Id.* at 12-13. Defendant asserts that the "such positive findings corroborate a finding that Plaintiff had a severe spinal impairment that required surgery and caused some pain, but the record does not corroborate a finding that Plaintiff's impairments were severe enough to satisfy all of the noted listing requirements." *Id.* at 13. Defendant maintains that the ALJ's reasoning at Step Three is supported by both Dr. Adbi's and Dr. Patti's physical examination findings, and the findings of the non-examining state agency medical experts. Def. Br. at 12-14.

In *Burnett v. Commissioner of Social Security,* 220 F.3d 112, 120 n.2 (3d Cir. 2000), the Third Circuit made clear that an ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." There, the Third Circuit remanded the matter because the ALJ made only conclusory statements without mentioning any specific listed impairments or explaining his reasoning. *Id.* at 119-20 (finding "although [the plaintiff] has established that she suffered from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in [the Impairment List]"). In *Jones v. Barnhart,* 364 F.3d 501 (3d Cir. 2004), the Third Circuit elaborated that, to satisfy *Burnett,* an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis." 364 F.3d at 505. Rather, the decision "read as a whole" must be capable of providing meaningful

judicial review.  *Id*. at 505.  Further, when analyzing Step Three, the ALJ must consider whether a claimant's combination of impairments is equivalent to any listed impairment.  *See Torres v. Comm'r of Soc. Sec*., 279 F. App'x. 149, 152 (3d Cir. 2008).

A claimant is presumptively disabled pursuant to Listing 1.04A when the following requirements are satisfied:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.]

With respect to Listing 1.04, the ALJ found, without explanation, that its requirements had not been met "because the evidence fails to demonstrate the existence of  a 'herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture' which results in the compromise of a nerve root or the spinal cord along with the requirements of A, B, or C of the Impairment Listing."  A.R. at 23.  However, at

Step Two, the ALJ found that Plaintiff's severe impairments include, *inter alia*, a degenerative spine disorder, spinal stenosis, and multiple herniated discs, conditions which seemingly satisfy the "disorders of the spine" definition in listing 1.04.  A.R. at 22.  The ALJ's explanation of his findings at Step Three fails to elucidate precisely why Plaintiff does not satisfy the impairment listing.  Rather, in his Step Three analysis with respect to the spinal listing, the ALJ merely recited the elements of the listing and conclusorily asserted that they were not satisfied.  Critically, however, this is not a case where the plaintiff's medical conditions plainly fall far short of the Impairment List's requirements.

Plaintiff's medical record contains evidence which suggests that Plaintiff suffered from several, in fact most, of the findings required by Section 1.04A.  For example, plaintiff's medical history reflects that as a result of these conditions, Plaintiff experienced muscle loss and atrophy, and sensory loss.  *See* A.R. at 400-439; 571-584.  In Dr. Patti's treating source statement, dated January 2016,  the doctor opined that Plaintiff was suffering from "decreased range of motion, decreased sensation, decreased reflexes, and decreased strength.  His cervical spine is unstable at this time disabling him from all work."  A.R. at 461.  If the ALJ found this medical evidence insufficient to meet the requirements of listing 1.04A, then the ALJ was required to detail those reasons.  *See Burnett,* 220 F.3d at 120 ("An ALJ "may weigh the credibility of the evidence, [but] he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.").  The ALJ merely quoted the listing and asserted in a conclusory fashion that its requirements were not met, without additional detail or any explanation.  *See Torres,* 279 F. App'x at 152 ("There is no way to review the ALJ's decision in this case because no reasons were given for his conclusion that Torres' impairments in combination did not meet or equal an Appendix 1 listing. "); *Ward v. Comm'r of Soc. Sec.,* No. 13-763, 2015 WL 5823061, at *6 (D.N.J. Oct. 1,

2015) (vacating and remanding ALJ's decision because  the ALJ's "combination analysis merely consists of a blanket statement that '[t]he claimant's impairments, singly or in combination, do not meet or equal the regulatory requirements of any listing.' This conclusory statement precludes meaningful judicial review."); *Babice v. Comm'r of Soc. Sec*., No. 16-06254, 2018 WL 6243045, at *7 (D.N.J. Nov. 29, 2018) (vacating and remanding ALJ's decision because ALJ "failed to explain why the impairments do not meet or equal the Listings individually or in combination. Indeed, the ALJ never combined the impairments and compared them to the listed impairments.").

Furthermore, while the ALJ need not place his entire listing analysis under a specific heading, reading the opinion as a whole, the ALJ did not consider each of Plaintiff's impairments in combination with each other, as required, or clearly analyze and evaluate all of the relevant medical evidence.  *See Jones*, 364 F.3d at 505 (explaining that in exercising judicial review, court should look to the ALJ's decision "read as a whole"); *see also Cop v. Comm'r of Soc. Sec.,* 226 F. App'x. 203, 208 (3d Cir.2007) (holding that "the fact that the ALJ included the medical evidence in his discussion of [RFC] (and stated he was doing so), instead of including it [at Step Three], does not change [the] result" that the ALJ conducted a proper step-three analysis).  For example, at Step Four of the analysis, the ALJ discusses Plaintiff's medical history, including Plaintiff's various spinal disorders.  The ALJ noted that Plaintiff had only received "limited treatment for his injuries following his first initial surgery, and has not required any additional invasive procures such as injections or additional surgical intervention," and that "improvement was noted with treatment with reduction of symptoms following cervical surgery."  A.R. at 27.  However, the evidence seems at odds with that conclusion.  Following the spinal surgery, Plaintiff continued to undergo physical therapy, and continued to report numbness in his arm and back pain which varied from 8 out of 10 to  10 out of 10.  A.R. 503-510; 571-81.  Further, although the ALJ noted the lack

of additional surgical intervention for his spinal condition, in the year following the initial spinal surgery, Plaintiff also underwent heart surgery, twice, for the placement of stents in June and July 2016.  A.R. 571.  It is not clear that the ALJ considered the potential limitations posed by Plaintiff's cardiac condition, and how it may have weighed against further surgical intervention for his spinal condition.

To the extent the ALJ may have found that Plaintiff did not satisfy the spinal listing portion of the Impairment List because the ALJ doubted Dr. Patti's findings**,** I am not persuaded the ALJ's decision was based on substantial evidence. In formulating Plaintiff's RFC, the ALJ explained that Dr. Patti's, opinion was only entitled to "some weight," however, the ALJ's proffered reasoning seems to be based on a circumscribed view of the evidence.  A.R. 27  The ALJ explained that he only assigned "some weight" to Dr. Patti's opinion that Plaintiff's spine was unstable rendering him unable to work, because, in the ALJ's view, the doctor's opinion was inconsistent with the doctor's findings contained in Plaintiff's treatment record.  A.R. 27 (noting that Dr. Patti's examination findings included, *inter alia*, "unremarkable cervical spine" and other findings which were "not indicative of a severely disabling condition.").  In that regard, the ALJ's reasoning hinged on Dr. Patti's finding during the post-operative visits which reflected that the "inspection of the cervical region is unremarkable." *Id*.  However, Dr. Patti also made the same findings during Plaintiff's pre-operative visits in April, May and June 2015, at a time when Plaintiff was still in need of surgery to stabilize his spine.  *See* A.R. 412, 415, 421.  Indeed, that specific portion of the surgeon's notes seem to be directed towards the physical appearance of Plaintiff's cervical region, rather than an assessment of Plaintiff's functioning.  For example, during the September 30, 2015 post-operative appointment,  Dr. Patti noted that "inspection of cervical region is unremarkable,

18

there are no signs of external injury. Atrophy of bilateral triceps noted. Incision is well-healed."
A.R. 430.  Thus, this observation does not speak to Plaintiff's ability to function after surgery.

The ALJ also found that the doctor's opinion  was only entitled to some weight because it
"was within four months of the claimant's surgery and is not indicative of his overall functioning
going forward.  A.R. at 27.  The ALJ further noted that Plaintiff had only received "limited
treatment" and did not need additional invasive procedures following his initial spinal surgery.  *Id*.
However, the ALJ's reasons for giving Dr. Patti's disability opinion little weight suggests that the
ALJ did not consider the entire medical record.[1]  As the finder of fact, the ALJ is charged with a
duty to evaluate all the medical opinions in the record under the factors set forth in the regulations
and to resolve any conflicts.  20 C.F.R. § 416.927.  The ALJ is responsible for considering all
physician opinions together with the entirety of the medical record.  20 C.F.R. § 416.927(b).  The
ALJ evaluates every medical opinion and decides the weight they are given following the listed
factors in the regulations. 20 C.F.R. § 416.927(c).  If a treating physician's opinion conflicts with
the medical record, then the ALJ may accord that opinion less than controlling weight, or even
outright reject it, so long as a reasonable explanation is given.  *Morales v. Apfel*, 225 F.3d 310,
317 (3d Cir. 2000) (citing *Plummer*, 186, F.3d at 429; *Frankfield v. Bowen*, 861 F.2d 405, 408 (3d
Cir. 1988); *Kent v. Schweiker*, 710 F.2d at 115 (3d Cir. 1983)).  Ultimately, it is within the province
of the ALJ to decide which physician to credit, but that task must be performed by considering all
of the evidence.  *Plummer*, 186, F.3d at 429; Sutherland v. Comm'r Soc. Sec., 785 F. App'x 921,
928 (3d Cir. 2019) (explaining that when the record contains conflicting medical opinions, "the

---

[1]      Both of the medical consultants from the state agency concluded that Plaintiff was capable
of performing "light work," which could arguably provide some support for the ALJ's finding.
A.R. 56, 103.  However, the ALJ, himself, disagreed with their conclusions and that a "sedentary"
RFC was more consistent with Plaintiff's conditions.  Accordingly, I do not find the state agency
medical consultants opinion probative, in this regard.

19

ALJ still may choose whom to credit but cannot reject evidence for no reason or the wrong reason." (internal citations and quotation marks omitted.))

Here, the ALJ discounted Dr. Patti's opinion based on his speculation about Plaintiff's potential improvement following surgery.  To the extent the ALJ's opinion suggests that Plaintiff may have improved following Dr. Patti's treating source opinion in January 2016, that rationale is not substantially supported by the medical evidence, which contains evidence through 2018.  In fact, in September 2015, one month after the spinal surgery, Plaintiff was still experiencing "atrophy of the bilateral triceps," "positive tenderness over the midline of the cervical spine," "range of motion of the cervical spine is decreased for flexion and extension."  A.R. 427.  These same findings are reflected in Dr. Patti's notes from August and September 2016 and March 2017. A. R. 571-581. Further, following Dr. Patti's treating source opinion, it appears that Plaintiff's condition did not markedly improve.  In August 2016, one year following his spinal surgery, Plaintiff began experiencing new mid and lower back pain, and reported that his pain was an 8 out of 10.  A.R. 571.   A March 2017 MRI of Plaintiff's lumbar spine showed "[r]ight foraminal disk herniation compressing the existing right L5."  A.R. 569.  The ALJ seems to have rejected Dr. Patti's opinion based largely on his own speculation about plaintiff's potential  improvement that simply is not supported by Plaintiff's medical records, which include evidence from the two year period following plaintiff's spinal surgery.  *Morales*, 225 F.3d  at 317–18 (explaining that ALJ may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." (internal citations and quotation marks omitted)).  The ALJ's error in this regard is particularly significant because the opinions of a treating physician are entitled to great weight unless they are

inconsistent with other substantial evidence.  *Morales v*, 225 F.3d at 317; *Frankfield*, 861 F.2d at 408.  This error entitles Plaintiff to a remand.

While I do not specifically reach the merits of Plaintiff's other arguments regarding the ALJ's RFC analysis at Step Four, I nonetheless find, for similar reasons, that the ALJ's treatment of the medical evidence casts doubt on his formulation of Plaintiff's RFC.  As detailed above, the ALJ discredited Dr. Patti, the treating physician's opinion, regarding the scope of plaintiff's limitations, based on a limited view of the evidence.  Thus, the ALJ's Step Four RFC must be reconsidered upon remand.  In conclusion, because the ALJ did not adequately explain his rationale for finding that Plaintiff does not have an impairment or combination of impairments which meet or medically equal the severity of an impairment on the Impairment List, the Commissioner's decision is vacated and the case is remanded.

## III.    CONCLUSION

For the reasons set forth above, this matter is remanded this case to the ALJ for further proceedings consistent with this Opinion.  An appropriate Order shall follow.


DATED: December 22, 2020                              /s/ Freda L. Wolfson
                                                     Hon. Freda L. Wolfson
                                                     U.S. Chief District Judge